Woolford and McKnight against Harrington.

Error to Pulaski Circuit Court.

Where a writ of summons issued from a Justice, returnable on the 16th of June, 1838, and the justice rendered judgment, by default, against the defendant, on the 17th of June, and the record does not show that the defendant appeared on the 16th, or that the case was continued, the judgment is illegal and void.

Where the entry on the Justice's docket was, that *the plaintiff* came and prayed an appeal, and offered A. B. as special bail for his appeal : whereupon A. B. came and acknowledged himself jointly bound with said *defendant* to pay the costs and condemnation of said Circuit Court ; signed by the Justice ; no valid appeal was taken by either party.

There can be no appeal without an order of the Justice allowing it, and a recognizance. The mere prayer of an appeal, and offer to give special bail, does not constitute an appeal. Therefore, in this case, there was no appeal on the part of the *plaintiff*.

The *defendant* neither prayed nor took an appeal—nor did he enter into a valid recognizance—nor did the Justice grant or allow him an appeal.

The recognizance is wholly void and nugatory. It contains no valid condition, it is not signed by the parties, and it was taken in a case where no appeal was either prayed or granted. It was made payable to no one, nor did A. B. ever become the security of the defendant in any recognizance.

In such a case, there being no appeal, the Circuit Court cannot assume cognizance of the cause ; and any judgment which that court gives in such case is wholly illegal and void.

This was an action originally commenced by Harrington, before a Justice of the Peace. The summous issued was as follows : " *State of Arkansas, County of Pulaski, City of Little Rock, ss.* The State of Arkansas to the Constable of the City of Little Rock—Greeting. Summon Israel Woolford to appear before me, a Justice of the Peace, on the 16th day of June, 1838, at my office *in said township,*" &c. Signed, " J. Brown, J. P." Upon it was the following return, " executed the within by reding the same to I. Woolford in Bigg Rock township, this 9 day of June 1838. L. Z. Bullock, Const."

On the 17th of June, the Justice rendered jugment against Woolford, by default, for $86 72 cts. debt, and $1 52 cts. damages and costs. Then follows this entry in his docket: " June 30th, 1838. This day came the plaintiff, and prayed an appeal to the next Circuit Court of Pulaski county, and offered *Joseph W. McKnight* special

bail for his said appeal.    Whereupon, the said McKnight, came per-
sonally before me, and acknowledged himself jointly bound with the
above named defendant to pay the cost and condemnation of said
Circuit Court.    *Test.*  J. Brown, J, P.".

The case thus went to the Circuit Court, and at October Term,
1838, an order, in substance, as follows, was made there.    That the
parties came, and the appellant failed to prosecute his suit; wherefore
the judgment of the Justice was *affirmed;* and it was considered that
Harrington recover of Woolford and McKnight $86 72 cts. debt, and
$3 24 damages, and costs before the Justice and in the Circuit Court.
Woolford and McKnight then sued their writ of error.

Fowler, for plaintiff in error.

Judgment having been rendered *by default in both courts below,*
there was nothing done by the appearance of Woolford, or otherwise,
to cure the defects, either in the process or service, or in the rendi-
tion of the judgment, consequently the whole proceeding is open for
the inspection and revision of this court.    The proceedings before a
Justice of the Peace (his court being one of undoubted *inferior* and
*limited* jurisdiction,) should show clearly that he had jurisdiction of the
cause.  In this case such jurisdiction is left utterly vague, uncertain, and
contradictory.    Brown no where shows whether he was a Justice of
any *Township in Pulaski county,* or of the *City of Little Rock,* jurisdic-
tions which are wholly different.    If a *Township* Justice, the fact
should appear ; if a *City* Justice, which would circumscribe still more
his jurisdiction, it is the more necessary.    The writ, then, is utterly
defective ; it is directed to the *City Constable,* by one who does not
show that he has authority, *as a City Justice,* to issue such mandate.
The writ is returnable to his office in " said township," no township
having been previously named ; whereas it should have been made
returnable in said *City,* to give jurisdiction as a City Magistrate,
which he must have been, to be authorized to direct a writ to said
Constable.  If a township Magistrate, as we would reasonably be led
to believe from the fact of the writ being made returnable in " *a town-
ship*," he could not direct a writ to the *City* Constable.   If said writ
was properly directed to said City Constable, there is no legal service,

because such Constable could only execute process *within* said city. The return is that the writ was served in "*Big Rock township;*" and the conclusive inference arises that the service was not made within the city, or the fact would have been so returned. Therefore, judgment was rendered against Woolford by the Justice, and also by the Circuit Court, without any legal service upon Woolford, or any appearance by him to cure the want of service.

There is another insurmountable objection to said judgment, as is contended for the plaintiffs in error, in this, that the judgment before the Justice was rendered on the *seventeenth* day of June, when the writ was made returnable on the *sixteenth;* and nothing appears to justify its being rendered on a different day from that of the return. On this point, no pretence can be raised from the transcript, that Woolford had notice of the time and place of trial and judgment.

The transcript also shows that it was *Harrington* who took the *appeal*, and that McKnight, became *his security*, not Woolford's, and, therefore, the judgment of the Circuit Court is erroneous. It could only have been properly rendered against Woolford *alone*, or Harrington and McKnight, *jointly*.

All of which is respectfully submitted.

Watkins & Hempstead, *contra:*

The objections to the proceedings in this case are purely technical. They do not reach the justice or merits of the case, nor is any principle of law evolved by the plaintiff's assignment of errors, which is not inseparable from the record, or which can be considered abstractly.

The objections taken by the plaintiffs, in their assignment of errors, may be briefly enumerated as follows:

*First*, to the irregularity in the appeal;

*Second*, to the want of proper service in the suit before the Justice;

*Third*, that the judgment in the Circuit Court was improperly rendered against McKnight, the security in appeal, as well as against Woolford, the principal, and that that judgment ought to have been for the costs of the suit alone, and not for the debt and damages.

By reference to the *Dig. p.* 374, 375; *sec.* 57, 59, 60, 61; all defects and irregularities, if any such there be, were cured by the appeal, and could not be taken advantage of in the Circuit Court. See *Dig. tit. Just. of the Peace, sec.* 60. See also our *Statute of Jeofails, Rev. Stat. tit. Practice of Law, sec.* 118, 119.

Besides, as to the process, this court has decided in several cases, that where a party appeals, it amounts almost to a contempt of Court, for him to set up in opposition to the judgment in the appellate court, that there was no sufficient service upon him in the court below.

But if this were not the rule of law, the record in this case, shows, that the parties appeared in the Circuit Court by their attorneys, that the appellant failing to prosecute his appeal, there was judgment by *nil dicit*, against Woolford and McKnight, his security in appeal.

The right of appeal is a sacred right, guaranteed by law, and is not to be trifled with, so as to enable a party to create delay, so that the debt may be lost, and then shuffle off the responsibility as, we may presume, one of the plaintiffs in error in this case is endeavoring to do.

As to the propriety of the judgment, it being against Woolford and McKnight his security, for debt, damages, and costs, see *sec.* 59, 61. That judgment is correct and proper. See also the last clause of *sec.* 55, in force, and applicable to this case.

It is to be inferred from their assignment of errors, that the plaintiffs in error contend that the court ought to have simply affirmed the judgment of the Justice, and *remanded* the case to the Justice, there to be proceeded on, &c., and that the Circuit Court ought only to have given judgment for the costs in that court.

On the contrary, the Circuit Court went on to give judgment upon the merits of the case, for a larger amount than the judgment of the Justice, against McKnight as well as against Woolford, for the debt, damages, and costs, as by law the Circuit Court might well do.

As to the objection that the original summons was returnable on the 16th June, 1838, and that the judgment appears to have been rendered on the 17th of June, without any continuance of the cause appearing to have been made, we contend that because this matter, if erroneous, has not been assigned for error by the plaintiffs, the court

here will not inquire into it. Among a number of minute matters which they have assigned for error, this one is omitted.

But such an error in the judgment of the Justice, does not invalidate the judgment of the Circuit Court in this case.

Because, first, the appeal from a Justice of the Peace to the Circuit Court, is nothing in the nature of a writ of a error or certiorari, but affords the parties a new trial *de novo*, upon the merits. The parties stand upon the record plaintiff and defendant, as they did before the Justice, nor indeed, was there any mode under the Digest, by which the appellant if defendant, could be prevented from setting up a new or different defence if he had one, and which he had either failed or neglected to set up at the trial before the Justice. And the statute concerning appeals, contemplates throughout, that no objections shall be taken upon such new trial, to want of form in the proceedings before the magistrate. The maxim of *ignorentia laicorum*, &c., need not travel in search of an application, while there are Justices of the Peace in Arkansas.

Now the record in this case shows that the parties appeared in the the Circuit Court, the appellant as well as the appellee, and the appellant failing to prosecute his appeal, the Circuit Court went on to render judgment *de novo*, upon the merits, which judgment was based upon the writing sued on, there of record before the court.

It is true the record contains the formal expression that the court for the default of the appellant, considered that the judgment of the Justice be affirmed, but the court went on in the next clause of the record to render a new judgment upon the merits, and for an amount larger than the judgment of the Justice.

There is nothing then in the record, or in the assignment of errors, by which it can be made to appear that the judgment of the *Circuit Court* in this case is erroneous.

LACY, J., delivered the opinion of the Court:

It is as much a principle of natural justice, as of legal right, that no one can be made a party to any judicial proceeding, without he has some notice thereof, and an opportunity offered him of defending his interest; and it is equally clear that he cannot be bound by any

judicial process, judgment, or decree, to which he has not been legally constituted a party on the record. The summons in the case before us, issued from the Justice's Court, on the first of June, A. D. 1838, and was made returnable on the 16th day thereof. It was properly executed on the 9th day of June, A. D. 1838, but the record wholly fails to show that the defendant appeared on that day to the writ, the 16th day of June, or that the cause was continued by consent or application of the parties. On the 17th day of June, judgment was entered up by default against the defendant, Israel Woolford, by the Justice's Court. It is most manifest that this judgment is illegal and void, for it was entered up on a day not authorized by the summons, and inconsistent with its mandate, and consequently, on a day the defendant was not bound to appear or be in court. The record does not show that he appeared agreeably to the summons on the 16th day of June, and as it is silent on that point, no legal inference can be drawn in favor of such fact, or that he waived his right to the notice, and voluntarily came in and defended the suit. Judgment was entered against him by default, but as he was never lawfully notified to appear on the day, or at the time it was given, of course he could not be guilty of any legal default; and, therefore, the judgment before the Justice's Court, was entirely insufficient and void. It is clearly evident from an inspection of the record, that no appeal was ever prayed or taken either by the defendant or plaintiff in the action, from the judgment of the Justice's Court. The first part of the entry stated that the plaintiff prayed an appeal, and offered to give special bail, but it wholly fails to show that the court ever entered an order allowing such appeal, or that he ever entered into the recognizance required by law. He has done no single act, required by the Statute regulating the practice in such cases, and consequently as the court never granted him an appeal, it cannot be pretended, that upon his part, there was a valid appeal taken in the case. His mere prayer for an appeal, and offering to give special bail, can in no possible point of view, be considered as constituting a valid appeal. There must be an action of the court on the subject, as well as of the party, and a compliance with the necessary requisites of the Statute to constitute a valid appeal.

We will now see whether the defendant ever prayed or took an appeal from the judgment of the Justice's Court. That he did not is perfectly evident. The record does not even state that he prayed an appeal, much less that he took one. The latter part of the entry states, that " the said McKnight came personally before the Justice, and acknowledged himself jointly bound with the above named defendant, to pay the costs and condemnation of the Circuit Court. Does this constitute a valid appeal on the part of the defendant, Woolford? Most assuredly it does not. In the present instance the defendant neither prayed or took an appeal, nor did he enter into a valid recognizance before the Justice of the Peace, agreeably to the provisions of the Statute, in such cases made and provided. The court neither granted or allowed him the benefit of an appeal, nor did the defendant do any act whatever, amounting to an appeal; as the record unquestionably proves. The supposed recognizance in this case is wholly void and nugatory in every respect. It contains no valid condition, it was not signed by the parties, and it is taken in a case where there was no appeal either prayed or granted. It was made payable to no one, nor did Joseph W. McKnight ever agree to become bound as the security of Israel Woolford in any recognizance. The act regulating appeals from the Justices of the Peace to the Circuit Court, declares " that if the defendant appeals, he with one or more approved securities, shall enter into a recognizance before the Justice, acknowledging themselves to be indebted to the plaintiff in a sum sufficient to cover the matter in dispute, and all costs, upon condition that, if the judgment of the Justice be affirmed by the court, the defendant will pay the amount of such judgment and costs," which recognizance shall be subscribed by the party appealing and his securities, and tested by the Justice. See *Dig.* 373, *sec.* 55. It is clearly true, that the defendant did not in one single instance comply with any of these indispensable requisites; and, consequently, there was no appeal prayed for, or taken by him from the judgment of the Justice's Court. This being the case, it necessarily follows, that the Circuit Court had no jurisdiction of the cause, and of course could pronounce no valid judgment in the premises. In cases coming up on appeals from the decision of Justices of the Peace, the jurisdiction of

the Circuit Court attaches and grows out of the appeal prayed and taken. And if there is no appeal, the Circuit Court cannot rightfully assume cognizance of the cause. And so it has been ruled in this Court, in the case of *Smith vs. Stinnett.* It unquestionably follows from these positions, that the judgment of the Circuit Court was wholly illegal and void, because it neither possessed or acquired jurisdiction of the subject matter in dispute, consequently the judgment and decision of the court below must be reversed with costs, the cause remanded to be proceeded in agreeably to the opinion here delivered, which is, that the Circuit Court dismiss the case for want of jurisdiction, and transmit the original papers back to the Justice's Court for further proceedings therein, according to law and the instructions here given.